UNITED STATES of America, Appellee,

v.

Richard ROMANO, Appellant.

No. 268, Docket 26085.

United States Court of Appeals Second Circuit.

Argued March 4, 1960.

Decided May 3, 1960.

of 21 U.S.C.A. §§ 173 and 174,[1] raises two principal questions: first, whether the evidence established entrapment as a matter of law, and second, whether the defendant was denied a fair trial by reason of the government's failure to produce two witnesses—a former narcotics agent and the person who concededly introduced Romano to the agent. We find no error in the trial court's resolution of these questions, or in the conduct of the trial, and we affirm the conviction.

### The Government's Case

On March 12, 1959, agent Newkirk was introduced to Romano in the Paramount Theatre in New York by "Bill" who said that Newkirk was a narcotic dealer from Philadelphia. Romano delivered two ounces of heroin to Newkirk in the men's room for which Newkirk paid Romano $350. At this time Romano gave Newkirk a telephone number where he could be reached at a certain hour of the day.

On March 24 Romano sold Newkirk an ounce of heroin in the men's room of a subway station at 42nd Street for $175, and at this time he gave Newkirk a different telephone number where he could be contacted. Later, on April 8, Newkirk bought two ounces of heroin from Romano who delivered it in the men's room of the BMT subway.

On cross-examination Newkirk described Bill as a colored man between 30 and 35 years of age. He said that he had first been introduced to Bill on March 12, the day of the first sale, by narcotics agent Joseph Lubert "who knew him in an undercover capacity." It is clear from the record that by this Newkirk meant that Bill was not aware that Lubert was a narcotics agent and that Lubert was using Bill as a source of information. Lubert, who was white, had told Newkirk that Romano, who was also white, was selling drugs but that Romano preferred to meet a colored man, fearing that a white man might be an agent. It was for this reason that Lubert asked Newkirk, who is colored, to

Peter L. F. Sabbatino, New York City (Thomas J. Todarelli and Sabbatino & Todarelli, New York City, on the brief), for appellant.

Kevin Thomas Duffy, Asst. U. S. Atty., Southern District of New York, New York City, (S. Hazard Gillespie, Jr., U. S. Atty., and Arnold Enker, Winthrop Allegaert, William Tendy and Gideon Cashman, Asst. U. S. Attys., New York City, on the brief), for appellee.

Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge.

Richard Romano's appeal from his conviction for selling narcotics in violation

---

1. Romano was sentenced as a youthful offender under 18 U.S.C. § 5010(b).

work on the case with him. Newkirk had known Lubert as an agent since 1951 but he did not know where Lubert was at the time of trial, as Lubert had resigned or retired as an agent some time after March 12.

Newkirk testified that he did not know Bill by any other name, that he did not know where he lived, that Bill was not an undercover agent of the government, that he had seen Bill only at the March 12 introduction and that he had not contacted Bill thereafter.

### Romano's Defense of Entrapment

Romano admitted the sales of heroin but claimed that he had been led into his dealings in narcotics by Bill. He described Bill as a colored man in his thirties. Romano himself was born March 23, 1941, and thus the first sale occurred just before he became eighteen. He said he had met Bill the previous fall through one "Skiff," a colored student whom he knew when he attended school at Borough Hall. Romano later went to see Bill somewhere in New York and Bill said that he could make some money at night if he, Romano, knew any people in Brooklyn he could get drugs from.

Romano's story was that he finally yielded to Bill's importuning. He had visited Bill at Bill's home and Bill told him that if he could buy one ounce of pure heroin he, Bill, could show Romano how to make money with it because he knew a lot of people who bought heroin. Romano had never had anything to do with narcotics, but, according to his testimony, that very night in a candy store back in Brooklyn, he told the owner of the store whom he knew as "Al" about Bill's proposition of making money from narcotics and Al was interested. Whereupon Al and Romano furnished Bill with narcotics six or seven times before Bill introduced agent Newkirk to Romano.

On cross-examination Romano said that he borrowed money from Al but couldn't remember how much he had repaid or when; that Al's candy store had closed a year before and was no longer there; Bill was the only person

regarding whom Romano could give any details; he said that Bill had lived at the Anderson Hotel and then had moved to an apartment house on 87th Street near Columbus Avenue. Although the government agents had known nothing about Bill, Romano apparently knew his name as his counsel stated during the government's case that Bill's last name was Jergen. Romano could not remember when he last saw Bill or whether he ever saw him after the March 12 introduction to Newkirk.

■ It is well settled that in order to sustain the defense of entrapment it must appear that the government or someone acting for the government was the initiator of the defendant's illegal acts in the sense of having induced the defendant to do what the defendant would otherwise not have been willing to do. Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413.

■ As it is unthinkable that the government should prosecute those whom it has urged to commit crime, our courts refuse to countenance prosecutions which rest on such an unsavory foundation. But, if the initiator of the criminal activity is not a government agent the defense of entrapment does not apply. On this record there is no basis for any claim that Bill was acting for the government. On the contrary, all the evidence is consistent with the government's theory that Bill unwittingly introduced Newkirk to Romano not knowing that Lubert and Newkirk were government agents. Clearly there was no error in leaving to the jury the issue of entrapment. Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L. Ed.2d 848; United States v. Masciale, 1958, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859.

■ As the case developed there was no need for the government to call Lubert and Bill and the trial judge quite properly did not interfere with the government's presentation by requiring the production of either witness. Romano,

according to his own story, met Bill through Romano's own friends; he dealt with Bill six or seven times before meeting Newkirk. To require the government to produce Bill on the strength of what appears in this record would permit any defendant to raise the defense of entrapment and thereby require the government to produce the introducing party or face dismissal of its case. This would erect an unnecessary requirement and one which would render impossible the prosecution of a large proportion of those who offend the narcotic laws. The government must get much of its information undercover, from people who choose to remain anonymous and who do not give their addresses to anyone. It is people of this sort, here Bill, who wittingly or unwittingly serve as the means of introducing to undercover agents of the government those who sell narcotics.

The defendant urges that he was denied a fair trial by reason of the government's failure to call agent Lubert and Bill as witnesses. What we have said makes it clear that there was no necessity to call Bill as a government witness. From the record it appears that Bill's name and whereabouts were known to the defendant and there is no reason to believe that the defendant could not have called him as a witness. If the defendant thought it was unfair for the government not to call Bill it was open to counsel to argue that to the jury. But counsel made no mention of this during summation, apparently realizing the weakness of such an argument.

As for calling former agent Lubert, he had not had anything to do with Romano. His only part in the investigation was to introduce Newkirk to Bill so that Bill in turn could acquaint Newkirk with Romano. But Bill could have shed all the necessary light on his relations with Lubert if the defendant really desired to develop that phase of his defense. As there was not the slighest support for the supposition that Bill was a government agent or employee—and indeed every reason to believe that he was not—there is no reason to see why the government should have called Lubert. Needless to say, if the defendant really desired his presence he could have called upon the government to produce whatever information it had as to his whereabouts or such witnesses as might have had knowledge as to his whereabouts. As it was, the defense never pressed its claim about Lubert's production nor did it seek to obtain information leading to Lubert's attendance at the trial. The appellant's assertion on appeal that he asked the court to direct the government to produce Lubert is not supported by the minutes. All that counsel did was to inquire of several government witnesses where Lubert was.

As to Bill, all that counsel first attempted to find out through the court was whether the government intended to produce Bill. When the trial judge indicated that the government need not answer such an inquiry, counsel requested the court to ask the United States Attorney to produce Bill. The court quite properly declined to do this and counsel did not further pursue the matter. We think the trial judge acted properly in refusing to direct the production of either of these two witnesses. United States v. Gernie, 2 Cir., 1958, 252 F.2d 664. There is no showing that the government, upon proper request, failed to make available any information which it had and which the defendant did not have. Cf. Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed. 2d 639.

The other claims of error are without merit. It was entirely proper for the trial judge to instruct the jury as to the evidence that the testimony of agent Newkirk was to the effect that Bill had not known that Lubert was an agent as defense counsel had misstated the evidence.

The trial judge's supplemental charge on entrapment, at the jury's request, was well within his discretion. The jury said they "would like to have the interpretation of the meaning of the word 'entrapment' as defined in Judge's charge." The judge then repeated to the jury the

definition he had given in his charge, which correctly stated the law. When the judge inquired whether more was desired, the foreman said "I think we are satisfied" and no further inquiry was made. There was no need for the judge to do more than he did, and he quite properly overruled the defendant's request again to relate entrapment to the defense version of the evidence.

The judgment is affirmed.