**UNITED STATES of America,**
**Appellee,**

v.

**Francisco Diaz LLAMAS and Jose Rodriguez, Defendants-Appellants.**

**No. 352, Docket 26121.**

United States Court of Appeals
Second Circuit.

Argued June 10, 1960.

Decided July 11, 1960.

Nicholas Atlas, New York City, for defendant-appellant Francisco Diaz Llamas.

Saul Roth, New York City, submits for defendant-appellant Jose Rodriguez on the brief of defendant-appellant Francisco Diaz Llamas.

Cornelius W. Wickersham, Jr., U. S. Atty., E. D. N. Y., Brooklyn, N. Y. (Judith A. Gelb, Confidential Asst. to the U. S. Atty., Brooklyn, N. Y., on the brief), for appellee.

Before LUMBARD, Chief Judge, and CLARK and FRIENDLY, Circuit Judges.

CLARK, Circuit Judge.

Llamas and Rodriguez appeal from their convictions of selling and conspiring to sell narcotics in violation of 21 U.S.C. § 174 and 18 U.S.C. §§ 2 and 371. Although sharply contested, there was ample testimony from federal narcotics agents to support the jury finding that defendants sold narcotics to one of the agents. Hence the appeal must fail unless there were errors in the trial. The

only substantial question here is raised by the attack directed to the judge's charge relieving the prosecution of any adverse inference due to its failure to call as a witness a special employee and informer who was shown to have been present and to have observed the sale. This involves an issue of great potential importance, although for reasons we shall indicate we do not think it is here presented in a way requiring definitive explication.

The chief government witness was Agent Garofalo, who testified that, accompanied by the informer, Joe Siena, he made contact with the defendants and purchased heroin from them. He was corroborated in part by Agent Hermo, who observed the contacts made and the heroin after it was delivered, though he did not see the actual delivery in an apartment. The defendants produced one Pedro Elias, who testified that it was he who made the sale; and there was some corroborating evidence from Rodriguez and two others, Llamas not taking the stand. Siena was not called and there was no testimony as to his present availability,[1] though the defense did bring out through cross-examination of the agent that Siena was a paid informer. No request to charge on this issue was presented, and the judge of his own accord toward the end of a lengthy charge gave the instructions here under attack. At the close of the charge defense counsel raised certain issues not here pertinent and then informed the court that he had no further requests to make. It is now asserted, however, that the instructions were so manifestly erroneous that we should note them and reverse.

According to what appears to be the preferred rule, the judge was not required to give an instruction upon the issue, McCormick on Evidence 535, 536 (1954); United States v. Cotter, 2 Cir., 60 F.2d 689, 691–692, certiorari denied Cotter v. United States, 287 U.S. 666, 53 S.Ct. 291, 77 L.Ed. 575; and here the judge might well have refrained in the absence of any request or, indeed, issue as to the matter. But it was within his discretion to speak, and hence we must decide whether what he said was error even in the absence of objection. First he said quite innocuously that there was no rule requiring either side in every case to call every possible witness. Then he went on to say:

"It is only when it is shown that the testimony of an uncalled witness would be superior in respect to the facts to be proved—would be superior to the testimony that has already been introduced by the witness who has been called, that the failure to call a witness would permit you to draw an inference."

And he asked whether there was any testimony to demonstrate that if Siena had been called, his testimony would be any superior to that of Garofalo. He concluded by saying that, since there had been no such showing as to Siena or as to another informer, Cortez,[2] "you cannot draw an inference that had they been called their testimony would have been any different than those called."

Now it is clear that the charge does not give a full synthesis of the law touching on the subject. Thus the statement that no inference arises from failure to call a witness whose testimony would not be superior to that offered or in effect would be cumulative apparently comes from 2 Wigmore on Evidence § 287 (3d Ed. 1940) and may well be appropriate, as in United States v. Antonelli Fireworks Co., 2 Cir., 155 F.2d 631, 638, certiorari denied 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640. But it is not the "only" case where an inference is rationally possible. For Wigmore himself discusses other situations, notably the case of witnesses equally available to both parties, as to which he says: "Yet the more logical view is that the failure to produce is *open* to an

---

1. In its brief here the prosecution now says that Siena was "in fact" unavailable; but that of course is not a part of the trial record.

2. At the trial the prosecution indicated it could not find Cortez, and no point is raised as to him on this appeal.

inference *against both parties,* the particular strength of the inference against either depending on the circumstances." 2 Wigmore on Evidence § 288 (3d Ed. 1940). And we applied this principle of the double inference in United States v. Beekman, 2 Cir., 155 F.2d 580. See also United States v. Jackson, 3 Cir., 257 F.2d 41. The problem is illuminatingly discussed by McCormick on Evidence 533–536 (1954), where he states certain factual conditions—that a potential witness be available and appear to have special information relevant to the case, so that his testimony would not merely be cumulative, and his relationship to one of the parties be such that he would ordinarily be expected to favor that side—requisite to support the inference.

 This analysis seems helpful here. The stated conditions seem perhaps likely or probable, but were not adverted to at the trial; and we are left in the dark as to how far they were satisfied. Had they chosen, the defendants could have dispelled this uncertainty by examining the government witnesses as to the whereabouts of Siena and calling for Siena's production if it appeared that the government could produce him or by taking steps to subpoena Siena or asking that he be called as the court's witness. United States v. Romano, 2 Cir., 278 F.2d 202; see also McCormick on Evidence 14 (1954); 9 Wigmore on Evidence § 2484 (3d Ed. 1940), cf. 3 id. §§ 910, 918. Or they could have commented to the jury in summation upon his absence, United States v. Jackson, supra, 3 Cir., 257 F.2d 41; United States v. Romano, supra, 2 Cir., 278 F.2d 202. No such steps to bring the matter to a head were taken; in their absence we are unwilling to hold the judge in error as a matter of law in removing the issue from the jury's attention. The purpose of the legal rules is not to penalize the prosecution, but rather to aid in the search for the truth; in view of other natural inferences possible, such as that the witness was presently unavailable or that the prosecutor was not prepared to vouch for his character, it would not have served this purpose to emphasize the particular inference that his story would have differed from that of other government witnesses. At least where no objection was taken, as required by F.R.Crim.P. 30, we find no reversible error.

Other errors are without merit. The charge holding the statutory presumption of 21 U.S.C. § 174 applicable to constructive possession of the narcotics was in accord with our holding in United States v. Cox, 2 Cir., 277 F.2d 302. And the court's answer to the question of a juror evincing concern as to the possible consequences to a witness who admitted the sale for which defendants were being tried was obviously responsive to the substance of the juror's difficulty. The government has moved to dismiss Rodriguez' appeal for delay in prosecution; but he asks that his appeal be considered on the points made by his codefendant. Accordingly we deny the motion to dismiss and affirm both convictions.