UNITED STATES of America,
Appellee,

v.

Louis H. COMI, Appellant.

No. 9270.

United States Court of Appeals
Fourth Circuit.

Argued April 16, 1964.

Decided Sept. 21, 1964.

Morgan L. Amaimo, Baltimore, Md., for appellant.

Robert W. Kernan, First Asst. U. S. Atty., for appellee.

Before BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges.

BOREMAN, Circuit Judge.

Louis H. Comi (hereinafter Comi or defendant) was convicted by a federal jury on all four counts of an indictment charging him with conducting a lottery operation and in engaging in receiving wagers in a lottery operation without having paid the special occupational tax, without securing the required occupational tax stamp, without registering to carry on a lottery business and without furnishing requisite information concerning the lottery operation to the District Director of Internal Revenue. On this appeal he assigns a number of grounds for reversal.

Comi asserts first that the District Court erred in denying his motion to suppress and in admitting certain evidence which had been procured by federal internal revenue agents following his arrest without a warrant. Included were $218 in United States currency (the serial numbers of which had been previously recorded by the agents) which an agent, Richard Pozecki, had paid Comi as prior "losses" on horse racing and numbers bets immediately before Comi's arrest, and certain oral statements which defendant made to the officers immediately following his arrest. He contends that his arrest without a warrant was illegal because the offense with which he was charged was a misdemeanor and was not committed in the presence of the officer who placed him under arrest. We find this contention to be without merit.

The evidence disclosed that on June 23, 1963, Pozecki, a special agent of the Intelligence Division of the Internal Revenue Service, assigned in an undercover capacity to investigate suspected gambling and racketeering activities carried on in violation of the Internal Revenue Laws, entered the Gay Nineties Bar & Restaurant in Baltimore, Maryland, which was managed by defendant. After identifying himself as a person who had placed several bets with Comi during the previous week, Pozecki tendered to him $220 in the marked bills, indicating clearly that they were in payment of "losses" resulting from gambling bets. Defendant accepted the money and placed it in his pocket after giving Pozecki $2 in change. Pozecki left the bar and went to an automobile parked a short distance away where two other investigators or special agents of said Intelligence Division were waiting and obtained his badge and identification papers. Immediately thereafter Pozecki, accompanied by the other agents, Metcalf and Schafer, returned to defendant's bar. Pozecki identified himself as an agent of the Intelligence Division of the Internal Revenue Service and Metcalf, after identifying himself, instructed defendant to accompany the agents to the other side of the room where he informed Comi that he was under arrest and proceeded to search him. The currency which Pozecki had given him was found in defendant's pocket. Shortly after his arrest, Comi admitted to the agents that his wife had been taking bets over the telephone and acknowledged that he was familiar with federal tax stamp requirements.

26 U.S.C.A. § 7608(b) (1), (2) (B) empowers criminal investigators of the Intelligence Division of the Internal Revenue Service to make arrests without

warrants for violations of the Internal Revenue Laws committed in their presence.[1]

■ At the time Comi accepted the $218 in cash, as wagering losses, Pozecki knew that Agent Schafer had, on several successive days, placed bets with someone at a telephone number listed to Comi's residence and Agent Metcalf, after investigation, had informed Pozecki that defendant had not secured a Special Occupational Tax Stamp. With this background information, defendant's acceptance of the money after the conversation concerning the wagering losses indicated to Pozecki that defendant was violating the Internal Revenue Laws in his presence. He had statutory authority to arrest defendant on the spot. We do not believe Pozecki lost this authority because of his absence from the defendant for a few moments for the purposes of securing his badge and identification and the protective assistance of two other agents who were waiting close by. The delay was manifestly reasonable and was for purposes associated with the arrest. See Annot., Arrest without Warrant, 58 A.L.R.2d 1056.

The payment to defendant in marked bills occurred in his bar. Pozecki could not be sure that he would not be opposed by bar customers if he asserted his authority to arrest the proprietor without any means of identification or badge of authority to display. Possibly, arresting the defendant immediately would have exposed Pozecki to unnecessary danger. Under such circumstances a rule of reasonableness should control. Promptness should not be the only or the governing

consideration where, as here, the continuity of action to effect the arrest was not broken. Nor do we think it material, as defendant contends, that it was Agent Metcalf and not Pozecki who actually told Comi that he was under arrest. No such declaration is required to constitute an arrest. To constitute an arrest there must be an actual or constructive seizure or detention of the person, performed with intention to effect an arrest, so understood by the person detained, and the restraint must be under real or pretended legal authority. See, generally, 5 Am. Jur.2d 695, Arrest § 1. See, also, Jenkins, v. United States, 161 F.2d 99 (10 Cir. 1947).

Pozecki returned to the defendant's bar, a place of business open to the public, in company with the two agents who were unknown to Comi. They were not, in any sense, trespassers. When they entered Comi asked, "Hey, Rich, what's the matter, Rich?" Since Agents Metcalf and Schafer were unknown to him, it is obvious that his query was addressed to Richard Pozecki who then immediately revealed his identity as did the other agents.

The defendant was instructed to accompany the agents to the other side of the room. By acquiescing he acknowledged the apparent authority of Pozecki to detain him and it is reasonable to conclude that he was aware of the restraint upon his freedom of movement. He was then notified that he was under arrest and it would seem to be immaterial that the notification came from one of the assisting agents in Pozecki's presence rather than from Pozecki himself. That

---

1. Title 26 U.S.C.A. § 7608, in pertinent part, provides:

"(b) Enforcement of laws relating to internal revenue other than subtitle E.—

"(1) Any criminal investigator of the Intelligence Division * * * of the Internal Revenue Service whom the Secretary or his delegate charges with the duty of enforcing any of the criminal provisions of the internal revenue laws or any other criminal provisions of law relating to internal revenue for the enforcement of which the Secretary or his

delegate is responsible is, in the performance of his duties, authorized to perform the functions described in paragraph (2).

"(2) The functions authorized under this subsection to be performed by an officer referred to in paragraph (1) are—
\* \* \* \* \*
"(B) to make arrests without warrant for any offense against the United States relating to the internal revenue laws committed in his presence * * *."

there was an intention on the part of Pozecki to effect an arrest is obvious from his conduct and the mere fact that Pozecki had the assistance of his two fellow officers will not render the arrest invalid. It follows that the search of Comi's person, incident to a legal arrest, was lawful and the evidence sought to be suppressed was properly admitted.

Defendant's next contention is that the District Court erred in refusing to rule that entrapment had been established as a matter of law and further erred in refusing to instruct the jury on the issue of entrapment.

At trial defendant testified that he had agreed to accept numbers bets only after the continued insistence and pleading of one Harry Anapa who worked for him part time as a repairman of music boxes and cigarette vending machines. He further testified that had it not been for Anapa's persistent pleas he would not have agreed to accept wagers. Mrs. Comi, defendant's wife (who actually accepted the bets over the telephone), first testified that her husband told her of Anapa's continued requests and directed her to accept the bets. She later changed her testimony and insisted that the defendant was not aware that she was accepting wagers. The evidence adduced at trial disclosed, as hereinbefore related, that early in 1963 Agent Pozecki began working as an undercover investigating agent for the Intelligence Division of the Internal Revenue Service in the Baltimore area in an effort to obtain information pertaining to gambling and racketeering activities. In early March 1963 Pozecki, acting in that capacity, was introduced by an informer to Anapa who, it was believed, would be helpful in providing information concerning such activities. Pozecki testified that he did not reveal his official identity to Anapa but told him instead that he was a "layoff man" working for another and was interested in "laying off" any action his principal couldn't handle. Pozecki offered to give Anapa a percentage of the bets if Anapa would supply him with telephone numbers where he could place

horse and numbers wagers. Anapa at first declined the offer but later accepted it. Pozecki did not specify any particular telephone numbers but told Anapa he was interested in all he could supply. During the course of approximately three months, Pozecki met with Anapa on several occasions and pursuant to their agreement Anapa gave him several telephone numbers. For his services in supplying this information, Anapa was paid thirty-five to fifty dollars a week plus weekly expenses which ranged from five to fifteen dollars.

One of the numbers which Anapa furnished Pozecki was listed at Comi's residence. (There were actually three telephone numbers registered to the residence and five telephones were located there.) On each day from June 18 through June 22, 1963, Agent Schafer, in Pozecki's presence, called defendant's number, identified himself by the code name of "Harry" and placed bets. Mrs. Comi answered the telephone and accepted the bets. The total amount bet over the five day period was $218. Anapa, who was called by the defense as a witness, refused to testify at trial on the ground that his testimony might tend to incriminate him. According to Pozecki's undisputed testimony, Anapa was never aware that he, Pozecki, was a government agent.

Since the sole evidence that defendant agreed to accept wagers only after the continued insistence of Anapa was the testimony of defendant and Mrs. Comi, which the jury could have refused to credit, it is manifest that the District Court did not err in refusing to rule as a matter of law that entrapment had been established. In the circumstances here, we think the District Court also properly refused to submit the issue of entrapment to the jury and to charge with respect thereto.

As stated in Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 821, 2 L.Ed.2d 848 (1958):

"* * * [T]he fact that government agents 'merely afford oppor-

tunities or facilities for the commission of the offense does not' constitute entrapment. Entrapment occurs only when the criminal conduct was 'the product of the *creative activity*' of *law-enforcement officials.* * * *" (Emphasis supplied in part.)

Discussing the defense of entrapment, the Court of Appeals for the Second Circuit in United States v. Romano, 278 F.2d 202 (1960), emphasized:

"It is well settled that in order to sustain the defense of entrapment it must appear that the government or someone acting for the government was the initiator of defendant's illegal acts in the sense of having induced the defendant to do what the defendant would otherwise not have been willing to do. * * *" Id. at 204.

Accord, Polski v. United States, 33 F.2d 686, 687 (8 Cir.), cert. denied, 280 U.S. 591, 50 S.Ct. 39, 74 L.Ed. 640 (1929). Here, there was no evidence that government agents initiated or in any way induced the defendant to commit the offenses for which he was convicted. They merely afforded the opportunity for defendant to accept the wagers. Although defendant's action in accepting the wagers may have been due to Anapa's insistence, Anapa was not a government agent. There is no evidence that he knew Pozecki was a government agent. In securing defendant's telephone number and agreement to accept wagers, he was not intending to aid the Government but his objective was to further his own economic interest—for "a cut of the action." In circumstances quite similar to those here, this court in Crisp v. United States, 4 Cir., 262 F.2d 68 (1958), held that the District Court was justified in refusing to submit the issue of entrapment to the jury. There, the defendant Crisp was convicted of making illegal sales of narcotics. She contended that she had been persuaded to make the sales by the importuning of one Warren. The evidence disclosed that a government agent, acting in an undercover ca-

pacity, had contacted Warren, who also was a dealer in narcotics, and agreed to buy narcotics from him. Warren bought narcotics from Crisp and resold them to the agent. After noting that the government agent was not present when Warren allegedly induced Crisp to make the illegal sales the court stated:

"Accepting her story at full value, and looking at all the evidence in a light most favorable to the defendant Crisp, we agree with the court below that there is nothing justifying submission of an entrapment issue to the jury with regard to Crisp. Warren was not a Government agent, and did not know he was dealing with agents until he and Crisp were arrested together on November 26, at the conclusion of Crisp's last sale of morphine. Concerning Crisp, there is not the slightest evidence of entrapment * * *." Id. at 69.

Similarly, in United States v. Romano, supra, (278 F.2d 202), the defendant contended that he had been led into his dealings in narcotics by one "Bill" who, the evidence indicated, had introduced Newkirk, an undercover agent, to the defendant. There was no showing that Bill knew that Newkirk was a government agent. Although the issue of entrapment had been submitted to the jury, the court indicated that the defense of entrapment was not applicable. The court observed:

"* * * [I]f the initiator of the criminal activity is not a government agent the defense of entrapment does not apply. On the record there is no basis for any claim that Bill was acting for the government. On the contrary, all the evidence is consistent with the government's theory that Bill unwittingly introduced Newkirk to Romano [the defendant] not knowing that Lupert and Newkirk were government agents. * * *" (278 F.2d at 204.)

In support of his contention that the issue of entrapment should have been submitted to the jury, defendant relies principally upon Sherman v. United

States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed. 2d 848 (1958). In the Sherman case, however, the defendant was induced to commit the crime by an active government informer who was fully aware that he was working for the Government. Thus, that case is readily distinguishable from the case at bar.

It is next contended that the District Court erred when it allowed counsel for the Government to interrogate defendant's wife, on cross-examination, with respect to two prior criminal convictions of the defendant. Counsel for the Government argue that when the defendant pleads entrapment as a defense, he cannot complain of an appropriate and searching inquiry into his previous conduct to disprove his assertion of lack of criminal intent. One of the convictions was in a state court for conspiracy to violate lottery laws, and the other was in federal court for income tax evasion. Defense counsel did not object to the questions concerning the conspiracy conviction and even stated that he considered the inquiry relevant. He did object to questions about the income tax evasion conviction on the ground that they were irrelevant and collateral to the main issue. The court overruled his objection and the witness answered that she knew of the conviction. Later in the trial defendant took the witness stand to testify in his own behalf. On direct examination he was interrogated by his own counsel about the lottery conspiracy conviction. On cross-examination counsel for the Government questioned him concerning both convictions without objection by the defense. Neither the direct examination nor the cross-examination went into details of the crimes but merely revealed their nature and the time and place of the convictions.

■ With some recognized exceptions, it is generally well settled that a defendant's evil character cannot be used by the prosecution to establish a probability of his guilt. The whole matter of character, disposition and reputation is closed to the prosecution and can be put in issue only by the defendant. Michelson v.

United States, 335 U.S. 469, 476, 69 S.Ct. 213, 93 L.Ed. 168 (1948). It is clear from the facts of the present case that the defendant's character had not been made an issue at the time Mrs. Comi was interrogated concerning the prior convictions unless, as counsel for the Government contends, the assertion of entrapment as a defense had automatically made it an issue. Although there is support for the Government's contention, Sorrells v. United States, 287 U.S. 435, 451, 53 S.Ct. 210, 77 L.Ed. 413 (1932), this question need not be decided here.

■■ Omitting consideration of the defense of entrapment, it is clear that the questions asked of Mrs. Comi would be improper. However, as above stated, defense counsel did not object to questions concerning the lottery conspiracy conviction. Clearly the questions pertaining to the income tax evasion were improperly permitted over objection by the defense. When the defendant took the witness stand in his own defense, his credibility could be impeached as that of any other witness and interrogation concerning previous convictions was proper for that purpose. Schwab v. United States, 327 F.2d 11, 16 (8 Cir. 1964); Taylor v. United States, 279 F.2d 10, 12 (5 Cir. 1960); Daniel v. United States, 268 F.2d 849, 852 (5 Cir. 1959); United States v. Howell, 240 F.2d 149, 158 (3 Cir. 1956).

Counsel for the defense could have requested the court to give an instruction limiting the pertinency of evidence of prior convictions to the question of defendant's credibility but failed to do so. Fed.R.Crim.P. 30. In fact, in a discussion between court and counsel out of the presence of the jury, defense counsel made the following statement:

"The only instruction I am asking the Court give is the defendant's request here on entrapment. I assume he is not doing that, I took an exception, and what instruction he gives beyond that, I don't care."

The information reaching the jury as to Comi's prior convictions was no more

harmful or prejudicial to the defendant because it was supplied by his wife than it was when the convictions were freely admitted by Comi himself on his direct and cross-examination. Any error in this connection will be disregarded as harmless. Fed.R.Crim.P. 52(a).

Other errors asserted are so patently without merit that we think it unnecessary to discuss them.

Affirmed.