**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Patricia DeALESANDRO, Defendant-Appellant.**

**No. 370, Docket 30310.**

United States Court of Appeals Second Circuit.

Argued May 4, 1966.

Decided June 7, 1966.

H. Elliot Wales, New York City (Bertram Herling and Abraham Glasser, New York City, with him on the brief), for appellant.

Robert C. Morvillo, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, New York City, and Otto G. Obermaier, Asst. U. S. Atty., with him on the brief), for appellee.

Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal from a judgment of conviction on two counts of attempting to bribe a juror. Defendant was sentenced to five years' imprisonment on each count, sentences to run concurrently.

The testimony of the Government's witnesses tended to show that on the afternoon of May 18, 1965, defendant Patricia DeAlesandro made some purchases in a shoe store managed by Kenneth Feldman, then serving as a petit juror in a narcotics conspiracy case entitled United States v. Armone, on trial in the Southern District of New York. Defendant struck up a conversation with Feldman while making her purchases. After some further conversation, they went out to dinner together. At the restaurant, defendant spoke of the unfairness of the machinery of justice against accused persons. She said she and her husband had a friend on trial at the United States Courthouse named Steve Armone, who had been wrongly accused. Feldman said no one of that name was on trial before him and, if he were, he wouldn't discuss it with anyone. She then asked how much money he made; whether he would like to go into the shoe business on his own; and whether he would like a trip to Europe. He protested that he couldn't afford such things and tried to change the subject. She then asked: "Five thousand dollars?," and said: "Suppose a proposition were made to you whereby at the right time you would remember who your friends were?" Feldman said he wouldn't be interested. He asked for the dinner check and, after taking her home, called the Federal Bureau of Narcotics and told them what had happened.

Defendant's version of the dinner conversation was substantially different. She said that she suggested that he take a vacation, perhaps to Europe, only after he had said that he was tired of work. She denied offering him five thousand dollars or a trip to Europe. She said that after he began describing the case he was sitting on, she mentioned that she knew someone named Armone. He asked, "How well do you know Armone? Maybe I could get a shoe store out of this for myself?" He then said he was only kidding. She testified that after she went home from the restaurant, she had a fight with her husband and left home, going first to her sister-in-law's in City Island, then to her mother's in Michigan, and finally to her brother's in California, where she was arrested.

1. *The Tactics of the Prosecution.*

Defendant contends that she was denied a fair trial by the improper tactics of the prosecution, in that the prosecutor asked the jurors to identify themselves with Feldman, i. e., a juror like themselves; sensationally depicted her as a temptress; argued that in order to believe her one would have to regard all the Government witnesses as perjurers; and misstated facts in its summation. According to defendant, all of these factors taken together justify reversal, particularly because the case against her was in her opinion so weak.

██ We disagree. In the first place, the case against defendant could hardly have been stronger. Feldman's version of her behavior in the store was corroborated; her story that marital difficulties forced her flight first to Michigan and then to California is hard to believe; she admitted that she knew Joseph Armone, one of the defendants on trial, and that she had talked of knowing him to Feldman, after finding out that he was a juror in a case with the same name. In the second place, her counsel at trial did not object to the prosecution's remarks to the jurors about Feldman being a juror as they were; nor did the defense object to the prosecution's few questions about defendant's physical appearance. In the absence of such objection, these tactics of the prosecution could be grounds for reversal only if extremely inflammatory and prejudicial. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 238–239, 60 S.Ct. 811, 84 L.Ed. 1129; United States v. Johnson, 331 F.2d 281 (2d Cir.), cert. denied, Pheribo v. United States, 379 U.S. 905, 85 S.Ct. 196, 13 L.Ed.2d 178 (1964). These were neither. The questions on physical appearance did no more than bring out what she was wearing and what her hair looked like. The remarks about Feldman's status as a juror did not transgress the bounds of propriety in this jury-tampering case.

██ The defense did object to the prosecutor's wholesale use of the word "perjurer" in his summation. The judge permitted the prosecution to state that in order to acquit the defendant, the jury would have to find Feldman and the two sales clerks to be prejurers. He sustained a defense objection to the prosecutor's statement that in order to acquit defendant, the Government witness Mendelsohn, a real estate agent, also had to be found to be a perjurer. These rulings were fair. The testimony of Feldman and the two sales clerks was in direct conflict with that of the defendant; the testimony of Mendelsohn was not. The prosecutor's remarks as to the testimony of Feldman and the sales clerks were fair

argument, and his remarks about Mendelsohn's testimony, as discounted by the comments of the court, were not prejudicial to defendant.

██ As for the alleged misstatement of facts in the summation, the prosecutor said the defense theory was that Feldman lied about the dinner in order to get out of jury duty. It is true that defendant did not suggest such a thing in her testimony, but the remark was fair since the defense counsel had inferred such a motive on Feldman's part during questioning. In any case, the defense did not object to the alleged misstatement at the time it was made.

 The summation by the prosecutor did at times attempt to reach dramatic heights but at most it can be characterized as overly flamboyant but not prejudicially inflammatory. Forensic zeal by prosecutor and defense counsel alike is apt to be displayed in these final moments of trial. Although reviewing courts must be ever alert to make sure that a defendant's right to a fair trial not be jeopardized, no such jeopardy is to be found here. Again, however, it might be appropriate to remind counsel that their task is to deal with the proof objectively and that their personal views thereon should not be revealed to the jury. As to the charge, this being a jury tampering case, it was quite appropriate for the trial court to tell the jury that if they were satisfied of guilt beyond a reasonable doubt that sympathy or any other reason should not cause them to hesitate to render a verdict against defendant, "as a clear warning to all that no one can tamper with the American, impartial jury system, which is the very cornerstone of our democratic institutions and get away with it."

2. *The Treatment of the Alleged False Exculpatory Statements.*

The court instructed the jury that if it found that defendant made any false statements at the time of her arrest in an attempt to exculpate herself, this might be considered as circumstantial

evidence from which consciousness of guilt might be inferred.

■ Defendant argues that the doctrine fairly summarized in the judge's charge was inapplicable here. First, she contends that her statements to the arresting FBI agent were mere protestations of innocence, which proved nothing as to her guilt or innocence. This contention is without merit. According to the FBI agent, she told him that she did not know of any narcotics trial in New York, and that she had nothing to do with any juror in any such trial. Both of these statements are contradicted by her own testimony at trial. See United States v. Wilson, 342 F.2d 43, 45 (2d Cir. 1965).

■ Second, she contends that alleged false exculpatory statements should be admissible only if it is determined that they have been made after defendant has been fully informed as to her constitutional rights, including the right to counsel. See United States v. Bando, 244 F. 2d 833, 842 (2d Cir.), cert. denied, 355 U.S. 844, 78 S.Ct. 67, 2 L.Ed.2d 53 (1957). In the present case, there was a dispute between defendant's testimony and that of the FBI agent as to whether defendant was fully advised of her right to counsel, a dispute which was never resolved explicitly by the judge or submitted explicitly to the jury.

We are by no means ready to accept defendant's premise that exculpatory and inculpatory statements stand on the same basis with respect to the need of warning. However, we do not reach that issue here. Even in defendant's version of her arrest, she was at least in part aware of her right to counsel, and her statements were made in response to brief informal questioning. See United States v. Cone, 354 F.2d 119 (2d Cir. 1965); United States v. Robinson, 354 F.2d 109 (2d Cir. 1965). In any case, the defense raised no objection at trial either to the introduction of the statements in question nor to the court's instruction. Had prompt objection been made, the question of the extent to which defendant had been advised of her rights could have been explored and resolved. The failure to make timely objection precludes the raising of the point on appeal. United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887 (1966).

■ We find no merit in appellant's contention that the trial court erred in denying her requests for a charge on entrapment. Taking defendant's testimony at face value, she mentioned that she knew someone with the same name as the defendant in the case in which he was sitting, to which he said "How well do you know Armone? Maybe I could get a shoe store out of this for myself"—a statement he immediately qualified by saying he was only kidding. This is hardly a sufficient basis to support the submission of the question of entrapment to the jury. See United States v. Kabot, 295 F.2d 848, 854 (2d Cir. 1961), cert. denied, 369 U.S. 803, 82 S.Ct. 641, 7 L.Ed. 2d 550 (1962). The case bears no resemblance to those in which a defendant may have attempted to bribe an official out of fear of retaliation by the official who had previously announced his own bribability. E. g., Capuano v. United States, 9 F.2d 41 (1st Cir. 1925); see Note, Entrapment by Government Officials, 28 Col.L.Rev. 1067, 1074 (1928).

■ Moreover, Feldman was neither a law enforcement official nor an agent of law enforcement officials. "The conduct with which the defense of entrapment is concerned is the *manufacturing* of crime by law enforcement officials and their agents." Lopez v. United States, 373 U.S. 427, 434, 83 S.Ct. 1381, 1385, 10 L.Ed.2d 462 (1963). The primary reason for the defense of entrapment is that "it is unthinkable that the government should prosecute those whom it has urged to commit [the] crime." United States v. Romano, 278 F.2d 202, 204 (2d Cir. 1960). This being so, "if the initiator of the criminal activity is not a government agent the defense of entrapment does not apply." Ibid.; United States v. Comi, 336 F.2d 856 (4th Cir. 1964), cert. denied, 379 U.S. 992, 85 S.Ct. 704, 13 L.Ed.

2d 611 (1965); Beard v. United States, 59 F.2d 940 (8th Cir. 1932); Polski v. United States, 33 F.2d 686 (8th Cir.), cert. denied, 280 U.S. 591, 50 S.Ct. 39, 74 L.Ed. 640 (1921); Note, Entrapment, 73 Harv.L.Rev. 1333, 1340–42 (1960).

### 3. The Sufficiency of the Evidence.

██ Defendant contends that the evidence against her was insufficient to go to the jury, since Feldman testified that she mentioned that her friend who was on trial was "Steve Armone," and the only Armones on trial were named Joseph and Alfred. Joseph apparently had a brother named Steve, but he had died prior to 1965.

This apparent inconsistency did not destroy the Government's case against defendant. It was clear that she meant an Armone on trial. She said that her friend was on trial. The jury could well conclude that she was not making offers to Feldman in order to pay her respects to a dead man whom she never knew, but in order to influence his decision in the Government's case against Joseph Armone, whom she admitted knowing.

The Court in marshalling the evidence said that defendant testified that she knew Steve Armone. This was not what she said; but the inadvertent misstatement was not objected to, and could hardly have been prejudicial. If anything, it reinforced defendant's argument that she had another Armone in mind than the one on trial.

### 4. The Duplicitousness of the Indictments.

Defendant contends that she was charged in two different counts for what amounted to the same crime. One count referred to 18 U.S.C. § 201 (offering a bribe to a public official—defined to include a juror—with intent to influence an official act—defined to include a decision on a case). The second charged violation of 18 U.S.C. § 1503 (endeavoring to influence a juror in the discharge of his duty).

It is true that the two counts charged essentially the same acts. The first count charged defendant with giving, offering, and promising a thing of value to a petit juror, with intent to influence the juror's decision in a pending case. The second charged defendant with endeavoring to influence a petit juror in a pending case by offering the juror money and other things of value. Appellant contends that the joinder of the two counts may have had an adverse psychological effect on the jury, "by suggesting to it that defendant has committed not one but several crimes." United States v. Ketchum, 320 F.2d 3, 8 (2d Cir.), cert. denied, 375 U.S. 905, 84 S.Ct. 194, 11 L. Ed.2d 145 (1963).

██ The fatal defect in the argument is that Congress has explicitly made defendant's conduct criminal in two separate statutes, and has indicated that the two are not to be regarded as defining the same offense. 18 U.S.C. § 1503 proscribes any corrupt endeavor to influence a juror in the discharge of his duty "corruptly, or by threats or force." This statute, which provides for maximum penalties of a $5,000 fine and five years in prison, does not require for its violation an offer or promise of a thing of value. 18 U.S.C. § 201 proscribes the offer or promise of anything of value to a public official with intent to influence any official act, and carries with it maximum penalties of $2,000 fine, 15 years in prison, and disqualification from federal office. The current version of § 201 was enacted after the current version of § 1503. By § 201(k), "[t]he offenses and penalties prescribed in this section are separate from and in addition to those prescribed in sections 1503, 1504, and 1505 of this title." The Senate Report emphasizes that "the provisions of the section are not to supersede the present statutes making it unlawful to obstruct justice by intimidating or influencing jurors or witnesses." S.Rep. No. 2213, 87th Cong., 2d Sess. (1962); 1962 U.S. Code Cong. & Ad. News pp. 3852, 3857.

This history makes clear the congressional intent to create two separate offenses, separately indictable and sepa-

rately punishable. See Gore v. United States, 357 U.S. 386, 387, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958).

### 5. *The Disparagement of Defendant's Character Witnesses.*

Defendant finally contends that the prosecution unfairly disparaged the testimony of two of her character witnesses, by asking them on cross-examination whether they knew that defendant knew Joseph Armone. In both cases the court sustained defense objections to the questions.

Even had the court permitted the witnesses to answer these questions, it is clear that no grounds for reversal would have been established. United States v. Gosser, 339 F.2d 102, 112 (6th Cir. 1964), cert. denied, 382 U.S. 819, 86 S.Ct. 44, 15 L.Ed.2d 66 (1965); United States v. Giddins, 273 F.2d 843 (2d Cir.), cert. denied, 362 U.S. 971, 80 S.Ct. 955, 4 L.Ed.2d 900 (1960); see Michelson v. United States, 335 U.S. 469, 479, 482, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

### 6. *Conclusion.*

The conviction is affirmed.