**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                     No. 95-5225

RICKY NELSON STONE,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                     No. 95-5405

TIMOTHY WAYNE DODSON,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Chief District Judge.
(CR-94-106)

Submitted: September 24, 1996

Decided: November 15, 1996

Before NIEMEYER, HAMILTON, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Peter A. Katt, LAW OFFICES OF DANIEL L. CRANDALL, P.C.,
Roanoke, Virginia; Lance M. Hale, LANCE M. HALE & ASSO-

CIATES, Roanoke, Virginia, for Appellants. Robert P. Crouch, Jr., United States Attorney, Ray B. Fitzgerald, Jr., Assistant United States Attorney, John Horn, Charlottesville, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

These cases were consolidated because the Appellants were indicted in the same indictment. Each appeal will be discussed separately.

No. 95-5225

Ricky Nelson Stone (Stone) appeals his sentence imposed pursuant to his conviction for aiding and abetting the distribution of cocaine base. An undercover officer arranged the purchase of the cocaine with Gilmer Stone, at a house Gilmer Stone frequented. Gilmer Stone requested the officer to come back in twenty minutes. The officer returned in twenty minutes and Stone brought the cocaine from the house to the officer and collected the money for Gilmer Stone, explaining that Gilmer Stone had stepped out for a while.

Stone's presentence report gave him the benefit of the "safety valve" provision in 18 U.S.C.S. § 3553(f) (West Supp. 1996), which allows a court to forgo applying the statutorily-mandated minimum sentence and impose a sentence within the defendant's guideline range. At Stone's sentencing hearing, however, the Government argued that Stone was not entitled to the application of § 3553(f) because Stone did not affirmatively act to provide the Government with any truthful information about his offense. See § 3553(f)(5). The district court found that Stone was not entitled to the application of § 3553(f). After the court made its ruling, Stone's counsel sought the

2

court's permission for Stone to testify so that he could comply with the provisions of § 3553(f). However, the court denied the request and sentenced Stone to the statutory mandatory minimum sentence.

On appeal, Stone claims that the district court erred in finding that he was not entitled to relief pursuant to § 3553(f) from the statutory minimum sentence. Stone claims that the district court did not depart downward from the statutory minimum because it did not believe it had the authority to depart. This court, therefore, has jurisdiction to hear Stone's claim. See United States v. Bayerle , 898 F.2d 28, 30 (4th Cir.), cert. denied, 498 U.S. 819 (1990). Further, the district court's determination of whether Stone fulfilled the requirements of § 3553(f)(5) is a question of fact reviewed for clear error. United States v. Romo, 81 F.3d 84, 86 (8th Cir. 1996); United States v. Rodriguez, 69 F.3d 136, 144 (7th Cir. 1995).

In order for a defendant to be entitled to relief under § 3553(f) he must satisfy five requirements. Both parties agree that Stone met the first four requirements of § 3553(f). At issue is whether Stone com- plied with the final requirement enunciated in § 3553(f)(5) that he truthfully provide to the Government all information and evidence he had concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. Stone claims that he satisfied the required proffer of information in his statements given at his guilty plea hearing, his statements made to his probation officer, the conversations between his attorney and the Government, the video tape of his offense, and the testimony of the undercover agent. Stone further alleges that he "stood ready" to provide whatever other infor- mation the court required.

It is not enough that Stone accepted responsibility for his own acts or that he was willing to cooperate if the Government questioned him. United States v. Ivester, 75 F.3d 182, 184-85 (4th Cir. 1996), cert. denied, ___ U.S. ___, 64 U.S.L.W. 3837 (U.S. June 17, 1996) (No. 95-8998); see United States v. Wrenn, 66 F.3d 1, 2-3 (1st Cir. 1995). Defendants seeking to avail themselves of the application of § 3553(f) "bear the burden of affirmatively acting, no later than sentencing, to ensure that the Government is truthfully provided with all information and evidence the defendants have concerning the relevant crimes." Ivester, 75 F.3d at 185. We find that the district court did not clearly

3

err in finding that Stone did not affirmatively act to ensure that the Government was truthfully provided with all the information and evidence Stone possessed. Further, even though Stone was willing to testify at his sentencing hearing after the district court ruled that he was ineligible for the application of § 3553(f), his willingness did not constitute an affirmative act as contemplated by § 3553(f)(5). See id. at 184-85. Accordingly, we affirm Stone's sentence.

No. 95-5405

Timothy W. Dodson (Dodson) appeals his conviction for possessing with the intent to distribute cocaine. Officer Lonnie Ray Kennedy, Jr., responded to a Danville Police Department dispatch describing the suspect of a robbery that had taken place at a Kemper Express Mart. The dispatch stated that the suspect fled the scene of the robbery in a green and white "Capital" taxicab with a double zero displayed on its trunk, heading in the direction of South Main Street.

Officer Kennedy saw a taxicab matching the description provided by the dispatch heading away from the South Main Street area and pulled the taxicab over. After talking to the driver, Officer Kennedy learned that the taxicab had picked up its passenger at the Kemper Express Mart. While Officer Kennedy questioned the passenger, he noticed a woman's brown purse sitting at the passenger's feet that matched the description of the purse stolen from the robbery victim. Officer Kennedy also noticed a red bank bag sitting between the passenger's feet.

When Officer Kennedy questioned the passenger about the purse at his feet, the passenger admitted that he had taken it from his wife at the Kemper Express Mart. At Officer Kennedy's request, the passenger provided him with a driver's license bearing a fictitious name. Officer Durwood Creed then arrived at the scene and informed Officer Kennedy that the passenger was in fact Dodson.

The officers requested Dodson to exit the taxicab. Dodson did so and handed the purse to Officer Kennedy. While holding Dodson's elbows, the officers began to escort Dodson in the direction of the police cars. However, Dodson began to resist the officers and attempted to break free from their control, stating that he wanted to

4

return to the taxicab to retrieve "his bag." The officers told Dodson that they would retrieve the bag for him, but Dodson kept resisting the officers.

The officers subdued Dodson, handcuffed him, and searched his person. The officers then placed Dodson in the rear seat of the police car and shut the door behind him so that he could not get out. Officer Creed retrieved Dodson's red bank bag from the passenger compartment of the taxicab. The officers opened the bag and discovered two pill bottles containing crack and powder cocaine, along with several rolls of bundled cash. The bag also contained a real-estate receipt in Dodson's name.

Dodson moved to suppress the evidence arising from the search of Dodson's bank bag. However, the district court denied the motion. Dodson pled guilty to possessing with the intent to distribute cocaine, but reserved the right to appeal the district court's adverse ruling on his motion to suppress evidence.

On appeal, Dodson claims that the district court erred by denying his motion to suppress as evidence the red bank bag and its contents found by the officers in the taxicab. The district court found that the police officers had arrested Dodson at the time they secured him in the police car and the search was incident to a lawful arrest. The determination of when an arrest took place is a question of fact. Peters v. New York, 392 U.S. 40, 67 (1968). We will not reverse factual findings unless they are clearly erroneous. United States v. McCraw, 920 F.2d 224, 227 (4th Cir. 1990).

To constitute an arrest there must be an actual or constructive seizure or detention of the suspect, performed with intention to effect an arrest, so understood by the person detained, and the restraint must be under real or pretended legal authority. United States v. Comi, 336 F.2d 856, 858 (4th Cir. 1964), cert. denied, 379 U.S. 992 (1965); see Peters, 392 U.S. at 67. Further, a person is seized within the meaning of the Fourth Amendment: (1) whenever physical force (however slight) is applied or; (2) whenever there is a show of official authority such that a reasonable person would have believed that he was not free to terminate the encounter and the person submits to the show of authority. California v. Hodari D., 499 U.S. 621, 623-29 (1991). The

5

test for the existence of a show of authority is an objective one, determined by whether the officer's words and actions would have conveyed a show of authority to a reasonable person. Id. at 628.

When Dodson exited the taxicab, the officers initially held Dodson by his elbows and when Dodson began to resist them, the officers used physical force to subdue and handcuff him. The officers then placed Dodson in the back of the police car with the doors closed. It is irrelevant that the officers did not tell Dodson that he was under arrest. Comi, 336 F.2d at 858. We find that Dodson was under arrest when the officers used physical force to seize him in order to effect an arrest under their legal authority. Dodson must have understood that he was under arrest as he was handcuffed and placed in the police car. Therefore, the district court's finding as to the time of arrest was not clearly erroneous.

For the incident search to have been constitutionally permissible, it must have been conducted incident to a valid custodial arrest. New York v. Belton, 453 U.S. 454, 462-63 (1981). The Fourth Amendment requires that a warrantless arrest be based upon probable cause. United States v. Watson, 423 U.S. 411, 414-24 (1976). Probable cause exists when the facts and circumstances within the officer's knowledge justify a person of reasonable caution to believe that someone has committed a crime. Beck v. Ohio, 379 U.S. 89 (1964). Further, probable cause is based upon the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230-31 (1983).

Considering the totality of the circumstances at the time of Dodson's arrest--when the officers placed him in the police car--the officers had probable cause to arrest him. Officer Kennedy responded to a dispatch identifying the suspect as having fled in a green and white "Capital" taxicab with double zero on the trunk. Officer Kennedy observed a taxicab matching the description in the geographic area relayed by the dispatch. Upon stopping the taxicab, the driver informed Officer Kennedy that he had picked up his passenger at the Kemper Express Mart, the location where the robbery had taken place. When looking through the taxicab driver's window, Officer Kennedy noticed a woman's brown pocketbook lying at Dodson's feet. Dodson told Officer Kennedy that he took the purse from his wife. At this point, Officer Creed arrived on the scene and told Offi-

6

cer Kennedy that the driver's license provided by Dodson had a fictitious name on it. Thus, Dodson's arrest was lawful.

Further, a search incident to a lawful arrest encompasses a search of the area that is within the "immediate control" of the defendant. Belton, 453 U.S. at 460. The passenger seat floor, the area where Dodson placed his wife's pocketbook and the red bank bag, was clearly within Dodson's immediate control. See United States v. Hatfield, 815 F.2d 1068, 1071 (6th Cir. 1987). It is irrelevant that Dodson was separated from the taxicab immediately prior to the search. See Belton, 453 U.S. at 462.

Because a warrantless search incident to a lawful arrest is constitutionally permissible, and since the search in this case was conducted in the course of a valid arrest, the district court did not err in denying Dodson's motion to suppress the evidence seized as a result of the search of the taxicab. Accordingly, we affirm Dodson's sentence and conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

No. 95-5225 - AFFIRMED
No. 95-5405 - AFFIRMED

7